Good morning, and may it please the court. Nick Muir, Federal Defenders, on behalf of Mr. Howard, I will endeavor to reserve about two minutes for rebuttal. Okay, please keep track of your own time. Thank you. Thank you. We're asking this court to find that the district court clearly erred when it found that Mr. Howard specifically, by a preponderance of the evidence, was in possession with intent to distribute methamphetamine, and therefore the district court abused its discretion when it applied the four-point enhancement under 2K2.1B6B. I think it's very important from the outset to establish our baseline here, that when law enforcement surrounded the hotel room on May 9th of 2023, there were four occupants inside. And so just from there, we start, I think, at a 25% chance that that methamphetamine is attributable to Mr. Howard. But looking at the undisputed facts, I think it becomes all the more clear that the government was unable to meet their burden to show by a preponderance that it was specifically Mr. Howard that possessed with intent to distribute that methamphetamine. While the hotel room was paid for by Mr. Howard, again, there were undisputedly four occupants inside. Is this a linchpin of your claim such that the House of Cards falls if they have not, if the government does not meet its burden to establish that Mr. Howard was the person who was intending to sell the drugs, then the gun that was located in the room that had his fingerprints on it also cannot be used for an enhancement related to possession of a weapon in connection with the distribution of drugs? I'm just trying to understand how those two arguments work together. So, Your Honor, I'm not sure I completely understand your question. But I think, yes, I mean, the percentage chance is the linchpin, right? They can't meet the preponderance as to specifically Mr. Howard possessing with intent to distribute drugs. We have Mr. Howard's gun.  Under the mattress. Correct. With drugs.  And paraphernalia together.  And how is this case distinguishable from United States v. Parler where you have the gun under the, I think there also was under the mattress, and the drugs were even elsewhere, they were in proximity if they weren't there. But you have here, gun, drugs, paraphernalia. I think they're very distinguishable, Your Honor. In Parler, my understanding is that that was a single family residence where Mr. Parler was the sole occupant. And in Parler, there was actually testimony at the sentencing hearing that he had been observed distributing drugs in the recent history. And I believe it was Mr. Parler that was actually on supervision for a distribution offense at the time. Here, Mr. Howard's case, we have a hotel room that's occupied by four people. Those four people were there prior to law enforcement arriving. We have no idea how long they were there. It could have been a very long time. And very importantly, Mr. Howard comes out first when called out. What's the significance of that? There was a 15 to 20 minute time period where the three occupants remained inside that room. You make a point of that several times. He came out first. Correct. And there's three other occupants in there who are surrounded by paraphernalia and methamphetamine and also law enforcement. So the inference is that they may have put the drugs under the mattress with the gun. Correct, Your Honor. And the district court even acknowledges that in sentencing. He says that we don't know who hid the baggies under the bed. It could have been Mr. Howard. It could have been one of the other three occupants. And I think there's 15 to 20 minutes in which three people are surrounded by law enforcement. I think we can assume there was drug use occurring that day based on the paraphernalia. It would be exceptionally short-sighted for those individuals to take those 15 to 20 minutes and not rid themselves of any contraband that they were in possession of before turning themselves into law enforcement. It's also on the record that two of those individuals had active arrest warrants that day and were almost certainly going to be taken into custody. I think it defies credulity to assume that someone who is trafficking methamphetamine would voluntarily turn themselves into law enforcement while literally holding the bag. And I think that's the issue here is that we have that. The other thing you make a big point about is that they found the baggie at the jail in his shoe. Correct. And I think. What does that tell us, if anything? Other than that he may have bought it or he may have obtained it for his own use? I think that's exactly what it tells us. I think there's an inference that can be drawn that based on the undisputedly user quantity of methamphetamine found in his shoe in a baggie consistent with those found under the bed, that if anything, Mr. Howard purchased methamphetamine that day. And as I said, he came out first within a few minutes. Why is that the inference as opposed to it's just part of the stash that he's selling because there's people, there's a larger number under the mattress. He just happened to have one for himself or maybe he was going out to sell it. I think that inference is also fairly plausible, Your Honor, but I think looking at the rest of the totality of the evidence there, what we lack is a direct connection between Mr. Howard and indicia of distribution. If you recall, his private vehicle was searched in addition to the hotel room, and inside I think we found nothing that was consistent with distribution of methamphetamine. We found no ledgers. We found no additional paraphernalia. We found no scales. We found no baggies. And most importantly, no large sum of money. And I think that's the big issue throughout this case is that there's no sum of money recovered at any point mentioned in the record. That was something that was present in many of the cases we cited. In DeTrance, or decided earlier this year, unpublished, there was money recovered in the driver's seat near the driver along with the indicia of distribution. In Hector and Parler, which are cited in briefing, large sums of money recovered. In Hamilton, decided earlier this year, on his person, large sum of money, scale, drugs, and a firearm. We don't have any money here. And specifically in Mr. Howard's private vehicle that is uncontestedly his, no money. Now, there were two cell phones found in that car, and the government, I think, places great weight on that. But the problem is, we don't know what was in those cell phones. Did they do a search of those cell phones? Your Honor, it's not in the record at this point in time. To answer your question, I believe there was a search. It's not in the record. And I think that undercuts the government's ability to prove by a preponderance. So there's no money. But let's say we didn't have the other three people. Would the gun and the amount of drugs and paraphernalia have been enough, in your view, without money, if it was only your client? Your Honor, I think that's a completely different case. Of course it is. I understand the question. And I think, yes, to be fair, the quantity of methamphetamine, about 40 grams and baggies, would be in discha of distribution. And in a case where it's just one person, like we see in Parler and Hector and in Hamilton, yes. I think the court could fairly find by a preponderance that that specific individual person in those circumstances was in possession with intent to distribute. But, again, the waters have been muddied so greatly by the fact that there are four total occupants, three of whom are in the room for 15 to 20 minutes unobserved, having every single motive to rid themselves of contraband. And the district court even acknowledges we don't know who hid those baggies under the bed. And I think that sort of encapsulates the issue with the government's inability to meet their burden to show by a preponderance that, specifically, it was Mr. Howard who possessed with intent to distribute. I think the court could fairly find that one of those four people was perhaps in possession with intent to distribute. But that, again, leaves us with that 25% chance it was Mr. Howard. What do you think is the best case that supports your argument? I think the cases that I've cited here, Hector, Hamilton, Detrant, which is unpublished but I think is perhaps most on point, there there was a lot stronger indicia of distribution associated specifically with the driver of the vehicle, Mr. Detrant, because of how close it was. And we don't have that 15 to 20-minute window of unobserved time. I'm running into my rebuttal. I did want to address briefly the substantive unreasonableness issue. Your Honors, I think the court there abused its discretion when it failed to rule on the objection to paragraph 75A. That was clearly objected to. The parties both spent tremendous amounts of time and effort weaving that into both their arguments and in evidence presented at sentencing. The district court did not resolve that objection. That's a clear violation of Rule 32. This court has held that strict compliance with 32 is mandatory and is reversible error not to do so. And I think most crucial in that is that Judge Bastian specifically questioned Mr. Howard as to whether or not he was present at that Iconolodge shooting in his allocution and still declined to rule on it. I think it was top of mind and that it was an abuse of discretion when he imposed sentence without resolving that objection. Does it matter that that issue wasn't raised in the opening brief? I think it could have been raised perhaps better in the opening brief, but I think it was addressed in our third point specifically, the objection to paragraph 75A. And it was cleaned up in the reply brief. I think... Can you point me to where in the record you're looking for having raised the issue in your opening brief? Your Honor, I don't have the page site, but I do believe that there's a specific discussion in that third subsection of our opening brief discussing the shooting at the Iconolodge and the objection to that activity. And in the break, I can find a page site for you, Your Honor. Great. We'll do a little bit of time on your clock when you come back. Thank you. Thank you. May it please the Court. My name is Ian Garrix. I'm an Assistant United States Attorney for the Eastern District of Washington. I did not handle the case below. This Court should affirm the District Court because the District Court did not err and did not abuse its discretion in applying the four-level enhancement for possession of a firearm in connection with another felony offense. And the issue is waived or withdrawn as to the discovery issue, but also imposing a substantively reasonable sentence. Addressing the sentencing issue first, which Judge Desai just raised, the defendant did waive this issue regarding Rule 32. The defendant's opening brief specifically on a sentencing appeal, there are two means by which to attack the sentence in federal court. One, by way of a procedural attack for procedural reasonableness, following the guidelines, applying the guidelines or the rules, and after the District Court finds the appropriate range, we have the substantive reasonableness. Those are separate challenges. In the defendant's opening brief, if the court looks closely at that, he only challenges substantive reasonableness. He never raises Rule 32 of the Federal Rules of Criminal Procedure, so therefore it's waived, and that would be under this court's precedent in ROM 455 F3rd 990. The government's already addressed the substantive reasonableness and I believe that is adequately resolved in the briefs. But in addition, even if the court gets to the merits of this Rule 32 argument, the defendant objected below to PSR Paragraph 75, which is that econo-lawed shooting, but actually stated at ER 23 that the District Court can consider the testimony and exhibits, including that Exhibit 1, which dealt with the econo-lawed shooting. He said, the defendant said at ER 23, the court should exclude if the government doesn't show the defendant was involved in that incident, but not exclude if they do. The court considered the testimony and reports in Exhibit 1, indicating that the defendant was a shooter, and the court specifically at ER 115-116 said, the government presented a preponderance of evidence that the defendant was involved in several other incidents in April 2023 involving illegal drugs and possession of guns. I realize there's a dispute that was as to who the shooter was. I'm not finding that beyond a reasonable doubt because the District Court did not need to. This is sentencing, not a trial. But the defendant was clearly involved in activity he should not have been involved. Also, the defendant did not object, did not make a Rule 32 claim at this point, nor did not object at the end of sentencing. Additionally, the defendant doesn't show under Petrie, the case cited by the defendant, how this, whether or not he actually did the shooting, actually affected Judge Bastian's sentence imposed. In fact, as stated with regard to substantive reasonableness, District Judge Bastian said he was basically imposing the sentence because of his recidivism. He kept committing crimes, going to prison, kept committing more crimes, more egregious. So it didn't have to do with the shootings. Therefore, with regard to that procedural reasonableness claim, it's waived. And even if the court considers it, it lacks merit. In regard to the four-level enhancement, this court should also affirm the District Court's reasonable decision, and on a clearly erroneous standard, its findings of fact. The preponderance of evidence showed that the defendant had paid for and occupied the hotel room. Under the bed was a loaded firearm with his DNA on it. Numerous baggies, there were about 30 to 40 baggies. There was a distribution quantity of methamphetamine, about 40 grams. Somewhat unclear where his phone was, but my gathering from the testimony, the phone was on top of the bed, and it was his phone. There was actually a call made to that phone that officers answered, and they were asking for a defendant. Did you search the phone? Did the officers search the phone? As counsel, my colleague has stated, that evidence, that is not in the record. That wasn't my question. Do you know? I understand. Was the phone searched? I understand. I don't actually know. I don't believe so. But I don't have that information, actually, personally, of whether or not the phone was searched. I mean, wouldn't you think that there, if he was, if he had been dealing drugs, you think there might be some worthy information on his phone? It certainly could be, that in many cases there are. But unfortunately, the record in this case, and we're not relying what was on the phone, it was just more the fact that he had that phone and multiple other phones in his vehicle outside the room, as well as another mock firearm, which the judge found was disguised to make it look even more dangerous. A lot of people have two phones. He had multiple. He had at least three. Well, you have testimony in combination with the testimony from an experienced detective, Moore, who stated in his experience, drug traffickers have multiple cell phones. It's part of what they do. It's not standing alone, Your Honor, that having cell phones makes you, multiple cell phones. I have multiple phones myself, but it doesn't make me a drug dealer. But in combination with all the other facts that were heard and based on the exhibits. What about the fact of the three individuals who left the hotel room for a period of 15 minutes, a gap of 15 minutes or so? The government would say that the district judge understood that, and as my colleague stated, the district judge said that, we didn't know exactly who, this is what the district judge said, who put the drugs under there, but we know a number of other things that tie him to methamphetamine distribution. And it's all these other factors that make him involved in the offense. Well, he didn't have what's under the bed, because we don't know, and there's three other people. And the fact that when he does check into the jail, he's only got a user quantity of the drugs. What are the other facts that would tie it to him? Those are the facts as stated, and... Yeah, but I said, I thought you just told me that the drugs under the bed didn't necessarily tie to him. It didn't have his fingerprints or DNA on the drugs, but it was next to his firearm with his DNA. It was next to a bunch of baggies. We know that the gun was his, or at least had evidence or indicia of being related to him. But we don't know who put those drugs there, right? There was no testimony as to that, but we have to look at the totality of the circumstances. And this is not, as Judge Bastian said, I'm not... He actually said a jury, if I had to look at these facts based on a reasonable doubt, that would struggle with it. But Judge Bastian said, based on a preponderance of evidence... That's my standard of review on appeal. On appeal, well, with regard to the preponderance of evidence, it's more likely than not, and that's under this court's recent case of Lucas. So we're talking 51%. We're not talking... Preponderance. Preponderance of evidence for all sentencing determinations. But we're reviewing that for an abuse of discretion, correct? You're reviewing his findings of facts for clear error, and the findings that he made, it's whether or not they were clearly erroneous, and that goes to whether or not they were... Excuse me. What I'm trying to get at here is, if there is some indicia that the drugs belonged to him, or that because of the firearm, because the hotel room was in his name and he paid for it, if all of these other factors at least can suggest that the drugs belonged to him, the cell phone, et cetera, is that enough to satisfy the standard, not only that the district court needed to make a claim, a finding for, but as we review it on appeal? Yes, that is enough because the finding for clearly erroneous, it has to be illogical or implausible or without support in the record to say that defendant's gun, his fingerprint, his DNA on it, he has a baggie of methamphetamine, meth, that matches the baggies that are actually used. There's like 30 or 40 baggies right there, so we know he's connected, it's methamphetamine. We know he has a firearm, drug traffickers, that's why there's testimony from the officer saying they have firearms, either to trade them for drugs or to protect themselves from danger. We know that... The district court didn't find that the drugs were his. The district court did not make that specific finding. The district court found that he was involved in methamphetamine distribution or possession with intent to distribute methamphetamine. And based on their answer in Judge Desai's question, the first issue is whether or not the district court's findings, factual findings, are clearly erroneous or not, and then the district court or this court reviews the district court's application of the guideline to the facts under the abusive discretion standard. So even under, so clearly erroneous, that's a high bar, and even under the fallback of abusive discretion, there is great deference to those findings. Your time is almost up, but I wanted to ask you, what significance do you place to the fact that he came out first and the other three remained in the unit for about 20 minutes? That is... The government doesn't believe that changes the fact that he gets the four-level enhancement because there's so much other indicia showing that he is tied to the drugs there with the firearm having the room. The fact that he comes out first doesn't mean anything. Maybe he didn't want to be caught holding the bag of meth, literally, the big bag, and perhaps he forgot about the small bag. So the government believes that this court should affirm. And finally, on the second issue, that discovery claim is withdrawn and abandoned by the defendant. Thank you, counsel. Thank you, Your Honors. Mr. Mayor, we'll put two minutes on the clock for your rebuttal. Thank you, Your Honor. I want to just follow up a little bit on the four-level enhancement here. I think it's important to note that Mr. Howard's DNA was found on the firearm, but it was not found, and he was actually excluded as a potential contributor of DNA on the large baggie of methamphetamine. I think that's a very important fact here. Further, Your Honor, I think you made a very good point about the cell phones. Cell phone standing alone is not indicia of distribution, and we have nothing found on them in the record to support any distribution activities. The phone was, in fact, searched, the one found in the hotel room, and as you can see, none of that evidence made it into the sentencing argument for the government. I don't think it would be supportive of their case. As to the possession of the firearm that the government notes is supportive of distribution activity, I think it's very important to remember that uncontestedly there was an attempted murder on Mr. Howard about two weeks prior to his arrest at this hotel room. Twenty shots were fired at him approximately. He was grazed by a bullet. He was beaten and is bleeding from his face and put in an ambulance by law enforcement. He was not found to be in possession of a firearm during that event. And this was in our sentencing argument that the motivation for possessing the firearm, I think, could be very clearly attributed to the recent attempt on his life. It does not excuse his possession, and we didn't argue that, but I think that is important for this court to consider when looking at the presence of a firearm. I think the district court placed far too much weight on just the mere proximity of that firearm to the drugs without taking into appropriate consideration that 15- to 20-minute time period in addition to the attempt on his life just about two and a half weeks prior. As to the substantive reasonableness argument, I apologize. I didn't have a copy of the brief handy. I couldn't find the page site. I do believe we raised it in our opening brief. It's mentioned. I have the opening brief in front of me, and I can't find any reference to the Rule 32 argument under Section 3, which is challenging Paragraph 75A. Correct. It wasn't specifically raised as a Rule 32 objection in the opening brief, but I do believe this court could still find abusive discretion in imposing the sentence. Abusive discretion can occur when the district court misapplies the law. There's an incorrect application of the law, and so if it's not preserved here as a procedural type error, I think you can still get to it under that substantive reasonableness because the district court clearly failed to rule on that very clear and important objection to Paragraph 75A during sentencing. Thank you, Your Honors. Thank you very much. I appreciate counsel's argument in that case. Very helpful. That case will now be submitted, and we will move to the second case on our calendar for argument.
judges: McKEOWN, PAEZ, DESAI